# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANCIS J. MARABELLA,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 16-1153** |
| | : | |
| **BOROUGH OF CONSHOHOCKEN** | : | |
| **et al.,** | : | |
| **Defendants.** | : | |

### MEMORANDUM OPINION

RUFE, J.                                                                NOVEMBER 10, 2016

Before the Court is the Motion to Dismiss Counts I-III of Plaintiff's Amended Complaint by Defendants Borough of Conshohocken and Borough Council of Conshohocken (Doc. No. 6). Count IV, which alleges age discrimination, is not at issue. For the reasons that follow, the motion is granted.

## I.    FACTS ALLEGED IN THE AMENDED COMPLAINT

This case concerns Plaintiff Francis Marabella's termination as Borough Manager and Borough Finance Officer by Defendants in March 2014. Before that, Plaintiff had served in both those positions for eight years, and was 16 months away from being able to retire with lifetime health insurance coverage for himself and his dependents.[1] Plaintiff now brings this suit seeking to recover damages for that loss, as well as for violations of 42 U.S.C. § 1983 and age discrimination. Plaintiff alleges that the Court has federal question jurisdiction over Plaintiff's federal law claims under 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

---

[1] Doc. No. 4 (Amended Complaint) ¶¶ 7-13. All allegations are taken as true for the purposes of this motion.

Defendants hired Plaintiff in April 2006, and the terms of Plaintiff's employment were governed by a written agreement providing that Plaintiff's employment was "at-will."[2]  Under the agreement, Plaintiff could be terminated by a majority vote of Defendant Borough Council at a public meeting, and Borough Council did so at a meeting on March 19, 2014 without providing Plaintiff any notice of the cause for his termination or a hearing.[3]  Upon termination, Section 10 of the agreement entitled Plaintiff to "a minimum severance payment equal to six (6) months salary at the current rate of pay," along with six months of benefits, including health insurance.[4] Plaintiff also alleges that under a separate provision, Section 17A, he is entitled to a retirement package that includes lifetime health insurance.[5]

Plaintiff alleges that, in the days leading up to his termination, Defendants unsuccessfully attempted to force him to resign.[6]  Plaintiff also alleges that Defendants orally agreed to allow Plaintiff to continue working at his then-current salary in the position of "Finance Director," but then reneged on this agreement by terminating Plaintiff.[7]  After Plaintiff's termination, Defendants made statements to the press regarding Plaintiff, including that "he was fired" and that they "didn't think he was doing the job right."[8]  Plaintiff alleges that these statements were defamatory and caused the belief that he was incompetent or engaged in misconduct.[9]

Plaintiff now brings four claims:  (1) breach of contract; (2) a claim for wages and benefits under Pennsylvania's Wage Payment and Collection Act ("WPCL"); (3) a § 1983 claim

---

[2] *Id.* ¶ 7, Ex. B (Employment Agreement) § 1.

[3] *Id.* ¶¶ 13, 20, Ex. B § 9A.

[4] *Id.* Ex. B § 10.

[5] *Id.* ¶ 22.

[6] *Id.* ¶ 15.

[7] *Id.* ¶¶ 15, 19.

[8] *Id.* ¶ 18.

[9] *Id.*

for violation of Plaintiff's due process rights under the Fourteenth Amendment; and (4) a claim for age discrimination.  Defendants have moved to dismiss the first three claims under Federal Rule of Civil Procedure 12(b)(6).

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[10]  In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[11]  Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[12]  Something more than a mere *possibility* of a claim must be alleged; a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[13]  The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[14]

## III.   ANALYSIS

### A.   <u>Plaintiff's Breach-of-Contract Claim Fails Based on the Plain Terms of the Agreement</u>

The parties agree that Pennsylvania law governs this dispute.[15]  Plaintiff argues that Defendants breached terms of his written employment agreement and also breached an oral

---

[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[11] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[12] *Twombly*, 550 U.S. at 555, 564.

[13] *Id.* at 570.

[14] *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation marks omitted).

agreement, made shortly before Plaintiff's termination, to allow Plaintiff to stay on in the position of Finance Director at the same rate of pay as his prior positions.  Plaintiff fails to state a claim for breach of contract based on either theory.

### 1. Plaintiff Fails to Allege That Defendants Breached the Written Employment Agreement

Plaintiff alleges that Defendants breached the written employment agreement by:  (1) failing to pay him retirement benefits as required under Section 17A of the agreement; (2) terminating him without cause; and (3) violating the implied duty of good faith and fair dealing.[16]  All three arguments are foreclosed by the plain terms of the agreement.

Under Pennsylvania law, "[w]here the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence, instead, the meaning of a clear and unequivocal written contract must be determined by its contents alone."[17]  Contract disputes may be resolved on a motion to dismiss "if the claims under which the plaintiff seeks relief are barred by the unambiguous terms of a contract attached to the pleading, because the interpretation of an unambiguous contract is a matter of law for the court."[18]

Plaintiff first alleges that, upon termination, he was entitled to retirement benefits under Section 17A of the agreement, which states:

> Except as otherwise provided in this Agreement, the Employee shall be entitled to the highest level of benefits that are enjoyed by other appointed officials, appointed employees, department heads or general employees of the Employer as provided in the Personnel Rules and Regulations or by practice.[19]

---

[15] *See* Doc. No. 6 at 4; Doc. No. 10 (Plaintiff's Answer to Defendants' Motion to Dismiss) at 4.

[16] Doc. No. 4 ¶¶ 22-25.

[17] *Bohler-Uddelholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 92 (3d Cir. 2001) (citations, alterations, and internal quotation marks omitted).

[18] *Greater N.Y. Mut. Ins. Co. v. Rudolph*, Civil Action No. 08-2650, 2008 WL 4710787, at *1 (E.D. Pa. Oct. 24, 2008) (quoting *Jaskey Fin. & Leasing v. Display Data Corp.*, 564 F. Supp. 160, 163 (E.D. Pa. 1983)).

[19] Doc. No. 4, Ex. B § 17A.

According to Plaintiff, because other Borough employees allegedly received retirement packages that included lifetime medical insurance, Plaintiff is also entitled to such packages under Section 17A, despite the fact that Plaintiff, by his own admission, was terminated before he became eligible for retirement.[20]  In the alternative, Plaintiff argues that this provision is ambiguous, and that he should be able to introduce evidence in support of his interpretation.[21] Defendants respond that this provision is unambiguous because the language "except as otherwise provided" renders Section 17A inapplicable where other provisions apply, and that upon termination, Plaintiff was entitled only to a severance package under Section 10 of the agreement, which guaranteed Plaintiff six months of health insurance, not lifetime coverage.[22]

The Court agrees with Defendants.  Section 17A is unambiguous, and its prefatory language—"except as otherwise provided"—renders it inapplicable where another provision controls.[23]  Here, under the plain terms of Section 10, Plaintiff was entitled only to six months of health insurance upon termination.  There is nothing in Section 17A to suggest it overrides Section 10's clear language, and indeed, Section 17A does not even mention retirement benefits. Moreover, Plaintiff never retired, and by his own admission, was ineligible for retirement when he was terminated.[24]  Plaintiff thus is not entitled to retirement benefits under Section 17A.

Second, Plaintiff argues that Defendants breached the agreement by terminating him without cause, but the agreement plainly states that Plaintiff's employment was "at-will" and that

---

[20] *Id.* ¶ 22.

[21] Doc. No. 10 at 2-3

[22] Doc. No. 6 (Defendants' Motion to Dismiss Amended Complaint) at 5-6.

[23] Plaintiff argues that Section 17A's reference to the Borough's Personnel Rules and Regulations renders it ambiguous, but the issue here is whether Section 17A applies at all, not what the Rules and Regulations say about retirement benefits.

[24] Doc. No. 4 ¶ 11 (alleging that "Plaintiff was about sixteen months away from being able to retire with lifetime health insurance coverage" at the time of his termination).

no provision "shall be construed as granting [him] any vested rights to employment . . . ."[25]

Pennsylvania law also presumes that employment is at-will, and in order to rebut this

presumption, "a party must establish one of the following:  (1) an agreement for a definite

duration; (2) an agreement specifying that the employee will be discharged for just cause only;

(3) sufficient additional consideration; or (4) an applicable recognized public policy

exception."[26]  Plaintiff fails to allege that any of these circumstances apply here.  Instead,

Plaintiff argues that Borough "policies and practices" (which are not attached to the Amended

Complaint or described in any detail) required "just cause" for termination,[27] but this vague

assertion does not override the plain terms of Plaintiff's agreement or overcome the presumption

of at-will employment under Pennsylvania law.[28]

Third, Plaintiff argues that even if Defendants have not breached an express term of the

agreement, they have violated the implied duty of good faith and fair dealing.  While

Pennsylvania law imposes an implied duty of good faith and fair dealing, "that duty is not

limitless" and "there must be some relationship to the provisions of the contract itself."[29]  "In

other words, the duty of good faith and fair dealing does not license courts to interpose

contractual terms to which the parties never assented."[30]  Here, the plain terms of the agreement

provided that Plaintiff's employment was at-will, and that upon termination Plaintiff was entitled

---

[25] Doc. No. 4, Ex. B § 1.  The only exception to this general rule is that, as noted, Plaintiff was entitled to certain post-termination benefits under Section 10 of the agreement.

[26] *Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 214 (Pa. Super. Ct. 1997) (citation omitted); *see also generally Scott v. Phila. Parking Auth.*, 166 A.2d 278 (Pa. 1960) ("Without more, an appointed public employee takes his job subject to the possibility of summary removal by the employing authority.  He is essentially an employee-at-will.").

[27] Doc. No. 10 at 2.

[28] *See Luteran*, 688 A.2d at 215 (finding that employer's handbook, which allegedly created an implied contract whereby employee could only be terminated for cause, did not override presumption of at-will employment).

[29] *W. Run Student Hous. Assocs. v. Huntington Nat'l Bank*, 712 F.3d 165, 170 (3d Cir. 2013) (citing *Kaplan v. Cablevision of PA, Inc.*, 671 A.2d 716, 722 (Pa. Super. Ct. 1996)).

[30] *W. Run Student Hous. Assocs.* 712 F.3d at 170.

only to the severance package listed in Section 10, not lifetime health insurance coverage. Defendants thus did not violate the duty of good faith and fair dealing because they terminated Plaintiff in accordance with the agreement, and Plaintiff does not allege that they failed to pay him the severance package due under Section 10 of the agreement. Thus, Plaintiff fails to state a claim for breach of his written employment agreement.

### 2. The Alleged Oral Agreement Did Not Entitle Plaintiff to Continued Employment or Benefits

Plaintiff also alleges that Defendants reneged on an oral agreement, reached prior to his termination, to allow him to stay on as Finance Director at the same rate of pay as his prior positions.[31] The significance of this oral agreement is twofold, according to Plaintiff: first, it overrode Plaintiff's status as an at-will employee under the written employment agreement, entitling him to continued employment at the same rate of pay for an indefinite period; second, it amounted to a settlement in anticipation of future litigation, meaning its terms are enforceable against Defendant. Both of these arguments are flawed.

Most fundamentally, the written employment agreement cannot have been modified or overridden by an oral agreement because it contained a clause requiring that any amendments be made in writing.[32] While such clauses may be overcome by clear and convincing evidence that the parties intended to waive the requirement that any modification be in writing,[33] Plaintiff fails to allege that the parties intended to waive that requirement here, and indeed, does not even

---

[31] Doc. No. 4 ¶ 19.

[32] Doc. No. 4, Ex. B § 19A ("This Agreement sets forth and establishes the entire understanding between the Employer and the Employee . . . .The parties by mutual written agreement may amend any provision of this agreement during the life of the agreement. Such amendments shall be incorporated and made a part of this agreement.").

[33] *E.g.*, *Nicolella v. Palmer*, 248 A.2d 20, 23 (Pa. 1968) ("[W]here the writing contains an express provision that it constituted the entire contract between the parties and should not be modified except in writing, the party seeking to show subsequent oral modification in the agreement must prove it by clear, precise, and convincing evidence. . . .").

mention the requirement in the Amended Complaint.[34]  The written agreement thus controls, and by its plain terms precludes any oral modifications.

Even assuming that the oral agreement was valid, it did not alter Plaintiff's status as an at-will employee who could be terminated without cause.  Plaintiff claims that because he provided "additional consideration" for the oral modification, his employment should be deemed to have been extended for a reasonable period of time, notwithstanding his at-will status.[35]  It is true that, in certain narrow circumstances, courts will find that an employee's provision of "additional consideration" rebuts the presumption of at-will employment and entitles the employee to employment for a reasonable period of time.[36]  However, such "additional consideration" exists only where "an employee affords his employer a substantial benefit other than the service which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform."[37]  Here, in contrast, Plaintiff alleges that he accepted an oral offer to take on *reduced* job duties in exchange for the same pay as his prior positions.[38]  This does not establish "additional consideration" sufficient to

---

[34] *See MDNet, Inc. v. Pharmacia, Corp.*, 147 F. App'x 239, 244 (3d Cir. 2005) (non-precedential) (affirming dismissal of breach-of-contract claim where plaintiff "failed to plead facts from which one could reasonably infer [the parties] intended to waive the clause requiring a written agreement" and the complaint made "no reference at all to the writing requirement").

[35] Doc. No. 10 at 4.

[36] *See Marsh v. Boyle*, 530 A.2d 491, 493-94 (Pa. Super. Ct. 1987).

[37] *Id.* at 494; *see also Martin v. Safeguard Scis., Inc.*, 17 F. Supp. 2d 357, 369 (E.D. Pa. 1991) (citation omitted) (explaining that "courts have given a narrow reading to 'additional consideration,' generally requiring a showing of some 'extraordinary detriment or . . . extraordinary benefit' before allowing the question to reach the jury").

[38] The cases cited by Plaintiff on this point are far afield and only confirm that Plaintiff has not pleaded that he provided "additional consideration."  In *News Printing Co. v. Roundy*, 597 A.2d 662, 664-65 (Pa. Super. Ct. 1991), the court found that the plaintiff was entitled to employment for a reasonable period of time because the plaintiff, after quitting his job, selling his house in Massachusetts, and moving to Pennsylvania, was fired by his new employer after three months.  Similarly, in *Cashdollar v. Mercy Hospital of Pittsburgh*, 595 A.2d 70, 72-74 (Pa. Super. Ct. 1991), the plaintiff, having resigned from a previous well-paying position, sold his house in Virginia, and moved to Pennsylvania with his pregnant wife and two-year-old child, was fired after sixteen working days.  And in *Martin v. Safeguard Scientifics, Inc.*, 17 F. Supp. 2d 357, 370-71 (E.D. Pa. 1991), the plaintiff was induced to give up a consulting business to join the defendant as a partner, only to be terminated six months later after facing alleged

8

overcome Plaintiff's at-will employment status, and Defendants were not obligated to employ Plaintiff for any period of time after the alleged oral modification.[39]

Plaintiff also argues, for the first time in his response to Defendants' motion to dismiss, that the oral agreement amounted to a settlement agreement reached in anticipation of litigation, and thus should be enforced.[40]   However, it is not clear (and Plaintiff makes no attempt to explain) why recasting the oral agreement as a settlement agreement overcomes the written employment agreement's express requirement that amendments be made in writing, or otherwise alters Plaintiff's status as an at-will employee.  Even if it did, Plaintiff's new characterization of the oral agreement as a settlement agreement runs contrary to the Amended Complaint, which alleges that Plaintiff agreed to stay on as Finance Director *before* receiving any notice of his termination.[41]   It is difficult to believe that the parties intended an oral agreement reached before Plaintiff's termination to function as a settlement for claims stemming from that termination. Implausibility aside, Plaintiff has failed to allege the particulars of this purported settlement agreement—what claims it barred, what claims it preserved, who was bound by it, how if at all it modified the written employment agreement, and so forth—rendering it unenforceable.[42] Plaintiff's argument thus fails.

---

harassment.  Here, in contrast, Plaintiff was employed for eight years before his termination, and gave up little of significance in accepting Defendants' alleged oral offer to allow him to continue on at the same salary.

[39] Plaintiff also argues that Defendants acted in bad faith by reneging on their oral offer, and that condoning their actions would be "contrary to public policy."  Doc. No. 10 at 4.  However, as explained above, while Defendants were under an implied duty of good faith and fair dealing, this duty cannot override express contractual terms, and because the oral modification was invalid (because it was not in writing) and did not overcome Plaintiff's status as an at-will employee (because, among other things, it lacked "additional consideration"), Plaintiff has failed to allege that Defendants breached this duty or otherwise acted in bad faith.

[40] Doc. No. 10 at 5.

[41] Doc. No. 4 ¶¶ 19, 20, 27.

[42] *See Lannett Co. v. Celgene Corp.*, Civil Action No. 08-3920, 2011 WL 1193912, at *2-3 (E.D. Pa. Mar. 29, 2011) (explaining that "[o]ral settlement agreements are enforceable, but only if the parties have agreed upon the essential terms of the bargain," that "if there are matters yet to be determined or disagreements about any of the essential

In short, the express terms of the written employment agreement are fatal to Plaintiff's breach-of-contract claim, and Plaintiff's allegations concerning an alleged oral modification of that agreement, however characterized, are insufficient to resuscitate it.

## B. Plaintiff's WPCL Claim Fails As Well

Plaintiff also seeks "wages and benefits due" under Pennsylvania's WPCL.[43]  This claim fails for the same reasons as Plaintiff's breach-of-contract claim:  Plaintiff had no contractual right to post-termination wages or benefits other than those under Section 10 of the written agreement.

"The WPCL provides a statutory remedy to employees whose former employers fail to timely pay earned compensation."[44]  That is, "the WPCL does not create a new right to compensation, but rather, merely establishes a right to enforce payment of wages and compensation that the employer has legally obligated itself to pay."[45]  "Accordingly, a prerequisite for relief under the WPCL is a contract between employee and employer that sets forth their agreement on wages to be paid . . . . Relief under the WPCL is implausible without existence of a contract."[46]  Here, because Plaintiff acknowledges that "his remedy under the [WPCL] is based upon breach by the Defendants of his contract,"[47] and Plaintiff has identified no such breach, Plaintiff's claim must be dismissed.[48]

---

terms, there is no agreement to enforce," and denying motion to enforce alleged oral settlement agreement because "[t]he parties never reached a point in their discussions where all issues had been resolved").

[43] Doc. No. 4 ¶ 30.

[44] *Scully v. US WATS, Inc.*, 238 F.3d 497, 517 (3d Cir. 2001) (quoting 43 Pa. Cons. Stat. § 260.5(a)).

[45] *Scully*, 238 F.3d at 516-17 (citations omitted).

[46] *Minielly v. Acme Cryogenics, Inc.*, Civil Action No. 15-6164, 2016 WL 1221640, at *8 (E.D. Pa. Mar. 28, 2016) (citations and internal quotation marks omitted).

[47] Doc. No. 10 at 6.

[48] *See Minielly*, 2016 WL 1221640, at *9 (dismissing WPCL claim where the plaintiff did not allege he had an employment contract with the defendant); *see also Lehman v. Legg Mason, Inc.*, 532 F. Supp. 2d 726, 733-34 (M.D.

## C. **Plaintiff Has Not Pleaded a Violation of § 1983**

Lastly, Plaintiff brings a § 1983 claim alleging that Defendants violated his due process rights by (1) terminating him without notice or a hearing; and (2) making defamatory public statements concerning his performance without the opportunity for a name-clearing hearing.[49] "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"[50] The Court analyzes Plaintiff's claim based on his termination as a property-based claim predicated on Plaintiff's alleged property interest in continued employment, and Plaintiff's claim based on Defendants' post-termination statements as a so-called "stigma-plus" claim predicated on Plaintiff's liberty interest in his reputation.[51] Both claims fail.

### 1. **Plaintiff Fails to Plead a Property-Based Due Process Claim**

Plaintiff fails to plead a property-based claim because he was an at-will employee, and thus had no protected property interest in his job. "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, [he] must have a legitimate entitlement to such continued employment."[52] "Whether a person has a legitimate entitlement to—and hence a property interest in—his government job is a question

---

Pa. 2007) (dismissing WPCL claim where plaintiff "failed to plead the existence of a contract between himself and any Defendant").

[49] Doc. No. 4 ¶¶ 27-28.

[50] *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

[51] *See Hill*, 455 F.3d at 233-34 (analyzing Borough Manager's claim for constructive discharge as a property-based claim, and claim based on defamatory statements as a liberty-based claim).

[52] *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

answered by state law."[53]  Here, as explained, Plaintiff was an at-will employee under

Pennsylvania law, and "[t]he decisional law is clear that an at-will employee does not have a

legitimate entitlement to continued employment because he serves solely at the pleasure of his

employer."[54]  Plaintiff "thus lacked a property interest in retaining his position as Borough

Manager that was sufficient to trigger due process concerns," and there is no need to consider

whether the procedures available to Plaintiff provided him with due process.[55]  Accordingly,

Plaintiff fails to state a property-based due process claim.[56]

## 2.   Plaintiff Fails to Plead a Liberty-Based Due Process Claim

Plaintiff also fails to plead a liberty-based claim because he has not adequately alleged

that he suffered stigma in connection with his termination.  "In order to state a claim for a § 1983

due process liberty interest violation in the public employment context, a plaintiff must satisfy

---

[53] *Hill*, 455 F.3d at 234 (citing *Elmore*, 399 F.3d at 282).

[54] *Id.* (alterations omitted) (dismissing claim by Borough Manager because, under Pennsylvania law, the plaintiff was an at-will employee).  In *Hill*, the Third Circuit also noted that the plaintiff's status as an at-will employee was confirmed by a Pennsylvania statute that expressly made Borough Managers "subject to removal by the [Borough] council at any time by a vote of the majority of all the members."  *Id.* at 234 n.11 (quoting 53 Pa. Cons. Stat. § 46141, *repealed by* 2014, April 18, P.L. 432, No. 37, § 3(2)).  That statute, which was repealed effective June 17, 2014, appears to have been in effect at the time of Plaintiff's termination.  Although not dispositive to the Court's decision (or mentioned in Defendants' briefs), this statute further supports the conclusion that Plaintiff was an at-will employee subject to termination without cause.

[55] *Hill*, 455 F.3d at 234 (citations and internal quotation marks omitted); *see also Elmore*, 399 F.3d at 282 (affirming dismissal of claim that plaintiff's termination as office manager for a township because plaintiff was an at-will employee); *Robertson v. Fiore*, 62 F.3d 596, 601 (3d Cir. 1995) (per curiam) (stating that at-will employee "lacks a protected property interest in his position within the meaning of the Fourteenth Amendment"); *Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 433 (E.D. Pa. 1998) (dismissing property-based claim by former Borough Manager because plaintiff was an at-will employee who could be terminated by a vote of the Borough Council).

[56] Plaintiff's claim would also fail for similar reasons if recast as a substantive due process claim.  To prevail on a substantive due process claim challenging a state actor's conduct, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 139-140 (3d Cir. 2000) (Alito, J.) (quotation marks and citation omitted).  Although whether a property interest is protected for purposes of substantive due process is determined by reference to fundamental rights under the United States Constitution, rather than state law, the Third Circuit "has held explicitly that public employment is not a fundamental right entitled to substantive due process protection." *Hill*, 455 F.3d at 234 n.12 (quoting *Nicholas*, 227 F.3d at 142-43).

the 'stigma plus' test."[57]  "Under the 'stigma plus' test, the creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'  When such a deprivation occurs, the employee is entitled to a name-clearing hearing."[58]  "To satisfy the 'stigma' prong of the test, the employee must show:  (1) publication of (2) a substantially and materially false statement that (3) infringed upon the 'reputation, honor, or integrity' of the employee."[59]

Here, Plaintiff fails to allege actionable "stigma" because the statements he identifies as defamatory amount to nothing more than accusations of poor job performance.  "Courts within the Third Circuit have consistently found that no liberty interest of constitutional significance is implicated when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance."[60]  Defendants' allegedly defamatory statements—"[Plaintiff] was fired . . . ," "dismissal means fired," "[w]e fired [Plaintiff] because we didn't think he was doing the job right.  His firing doesn't bother me . . . ," and similar remarks—fell within this category and are insufficient to ground a liberty-based due process claim.[61]

---

[57] *Brown v. Montgomery Cty.*, 470 F. App'x 87, 91 (3d Cir. 2012) (citing *Hill*, 455 F.3d at 236).

[58] *Brown*, 470 F. App'x at 91 (quoting *Hill*, 455 F.3d at 236).

[59] *Brown*, 470 F. App'x at 91 (citing *Ersek v. Springfield*, 102 F.3d 79, 83-84 (3d Cir. 1996)).

[60] *Plouffe v. Cevallos*, Civil Action No. 10-1502, 2016 WL 1660626, at *10 (E.D. Pa. Apr. 27, 2016) (quoting *Carroll v. Lackawanna Cty.*, Civil Action No. 12-2308, 2015 WL 5512703, at *9 (M.D. Pa. Sept. 16, 2015)).

[61] *See Brown*, 470 F. App'x at 91 (finding plaintiff failed to satisfy stigma prong where plaintiff alleged only that defendant described plaintiff's conduct as improper); *see also Fox v. Cheltenham Twp. Auth.*, Civil Action No. 12-716, 2012 WL 2273424, at *4 (E.D. Pa. June 18, 2012) (dismissing stigma-plus claim brought by plaintiff EMT because plaintiff only alleged that defendant criticized his job performance, which did not "as a matter of law infringe on Plaintiff's constitutional liberty interest in his reputation"); *see also Kohn v. Sch. Dist. of Harrisburg*, 817 F. Supp. 2d 487, 498 (M.D. Pa. 2011) (dismissing stigma-plus claim against mayor because plaintiff only alleged that mayor "questioned his competency and job performance, which is insufficient to satisfy the stigma part of the stigma-plus test").

Despite this, Plaintiff argues that "the manner" of his termination rendered it stigmatizing, but fails to explain why this is so.[62]  Even taking the facts in the Amended Complaint as true, Plaintiff merely alleges that he was terminated at a public meeting in accordance with his employment agreement, and that Defendants then made statements to the press explaining the reasons for his termination.[63]  Nothing about these circumstances renders them so stigmatizing as to infringe upon Plaintiff's liberty interest in his reputation, as Defendants' statements concerned only his work performance.  Plaintiff thus fails to state either a property-based or a liberty-based due process claim under § 1983.

### D.  **Leave to Amend**

Plaintiff requests leave to file a Second Amended Complaint,[64] and Defendants do not appear to oppose this request.  Rule 15(a) of the Federal Rules of Civil Procedure permits amendment of pleadings with leave of court, and directs that courts "should freely give leave when justice so requires."[65]  Leave should be granted unless:  (1) an amendment would be futile or there has been undue delay in the amendment; (2) the court finds bad faith or dilatory motive by the moving party; (3) an amendment would cause prejudice to the non-moving party; or (4)

---

[62] *See* Doc. No. 10 at 8.

[63] Plaintiff argues in his reply brief that these statements "create the inference or public suspicions that Plaintiff did something wrong with the finances (monies) of the Borough," but even if this were true, it would not amount to anything more than job-related criticism, which is insufficient to ground a due process claim.  *E.g.*, *Brown*, 470 F. App'x at 91 (allegation that defendant accused plaintiff of improperly exchanging gifts did not give rise to due process claim).  Moreover, the articles attached to the Amended Complaint paint a different picture, namely that Plaintiff was terminated because holding down two positions at the same time was "too much for him," not that he was engaged in any misconduct.  Doc. No. 4, Ex. A at 15 (ECF Pagination) (article in which a councilperson stated that Plaintiff had "a lot of work, holding those two positions," and that the council felt "it was a little too much for him").

[64] Doc. No. 10 at 9.

[65] Fed. R. Civ. P. 15(a).

the moving party has demonstrated repeated failure to cure deficiency by amendments previously allowed.[66]

As detailed above, each of Plaintiff's claims suffers from serious legal deficiencies, rather than mere pleading failures:  Plaintiff's breach-of-contract claim is barred by the plain terms of the written employment agreement; Plaintiff's WPCL claim fails for the same reason as Plaintiff's breach-of-contract claim; and Plaintiff's § 1983 claim fails due to the lack of protectable property interest in Plaintiff's continued employment and Plaintiff's inability to establish stigma based on the circumstances of Plaintiff's termination.  Thus, if Plaintiff seeks to file a Second Amended Complaint, he must seek leave of the Court by written motion that includes a copy of the proposed Second Amended Complaint.

## IV.  CONCLUSION

For the reasons stated above, Defendants' motion will be granted.  An appropriate Order will follow.

---

[66] *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citing *Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1196 (3d Cir. 1994)).